United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALAN MIEGEL,
Plaintiff,

v.

JEFF LALIBERTE,
Defendant.

Case No. 26-cv-02690-JCS

**ORDER RE MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS**

Re: Dkt. Nos. 15, 28

## I. INTRODUCTION

Plaintiff Alan Miegel brings this action to compel arbitration under a settlement agreement he entered into with his former employer, PayFactors Group LLC ("PayFactors") with respect to claims he seeks to arbitrate against PayFactors' former CEO, Jeff Laliberte, who signed the settlement agreement on behalf of PayFactors. Miegel contends Laliberte is bound by the settlement agreement, even though he is not a party to it, and therefore, that the arbitration provision in the agreement specifying that disputes will be determined by arbitration in San Francisco, California, is binding on Laliberte and amounts to consent to personal jurisdiction in California. Presently before the Court is Plaintiff's Motion to Compel Arbitration ("Motion to Compel") and Laliberte's Motion to Dismiss Pursuant to Fed.R.Civ.P 12(b)(2) for Lack of Jurisdiction ("Motion to Dismiss"). A hearing on the Motions was held on October 14, 2026. For the reasons set forth below, the Court GRANTS the Motion to Dismiss and dismisses this case without prejudice. Because the Court finds that it does not have personal jurisdiction over Laliberte it does not decide the Motion to Compel.[1]

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. The Settlement Agreement

On January 22, 2018, Miegel entered into a settlement agreement with PayFactors. *See* dkt. no. 1 at ECF pp. 32-41 ("Settlement Agreement"). The parties are in agreement that both of the pending motions turn on the question of whether the Settlement Agreement is binding on Laliberte as an individual. *See* Miegel's Opposition to Motion to Dismiss at 3 ("The consent inquiry therefore collapses into the merits of the petition to compel: both rise or fall on whether the respondent agreed to arbitrate the dispute in this forum."); Laliberte's Opposition to Motion to Dismiss at 1 n. 2 ("For the same reasons [Laliberte cannot be compelled to arbitration], he "has not consented to jurisdiction and this Court cannot exercise personal jurisdiction over [him]."). Laliberte signed the Settlement Agreement for PayFactors as its Chief Executive Officer. Settlement Agreement at 10. It is undisputed that Laliberte signed in his official capacity as CEO of PayFactors and that he was not a party to the Settlement Agreement. *See* Miegel's Opposition to Motion to Dismiss at 4 ("Mr. Miegel has acknowledged from the outset that Mr. Laliberte is a 'non-signatory to the Settlement Agreement.' ").

The Recitals to the Settlement Agreement set forth the following facts relating to the underlying dispute:

> WHEREAS, between March 2014 and May 2016, Alan Miegel ("Miegel") was an employee of [PayFactors] . . . ;
>
> WHEREAS, on or around March 3, 2014, Miegel and PayFactors (individually each a "Party" and collectively the "Parties") entered into a letter agreement setting forth terms and conditions related to Miegel's employment and compensation by PayFactors, including terms regarding the payment of salary and sales commissions to Miegel and a provision stating that Miegel would receive "630,252 Units from the PayFactors Group, LLC Equity Sharing Plan that would earn 1.5% from the proceeds of a sale of the Company," which would "vest over four years … and be governed by the Plan" ("Employment Agreement");
>
> WHEREAS, on or around March 3, 2014, Miegel and PayFactors entered into an Employee Non-Solicitation, Non-Compete, Intellectual Property and Confidentiality Agreement regarding duties and obligations owed by Miegel to PayFactors during and after his employment with PayFactors ("Confidentiality Agreement");
>
> WHEREAS, following Miegel's resignation from PayFactors, a



United States District Court
Northern District of California

> dispute arose between the Parties regarding whether, under the terms and conditions of his Employment Agreement, PayFactors owed Miegel certain sales commissions that he claimed had accrued to him after his resignation from the company;
>
> WHEREAS, following Miegel's resignation from PayFactors, a dispute arose between the Parties regarding whether Miegel was in compliance with the duties and obligations imposed on him under the Confidentiality Agreement;
>
> WHEREAS, following Miegel's resignation from PayFactors, a dispute arose between the Parties regarding whether Miegel retained any interest in the "630,252 Units" of phantom equity described in his Employment Agreement;
>
> WHEREAS, to avoid the time, expense, and uncertainty of litigating the disputes that have arisen between them, Miegel and PayFactors wish to resolve these disputes, and to settle and fully release any potential claims that may be held by either Miegel or PayFactors against the other, subject to the terms and conditions set forth below;
>
> NOW, THEREFORE, in consideration of the mutual promises contained herein and other good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, the Parties enter into this Settlement Agreement & Compromise ("Agreement")[.]

Settlement Agreement at 1.

The Settlement Agreement provided for payment to Miegel of $800,000 in Commission Settlement Payments. *Id.* at 2. It contained the following nondisparagement provision:

> **Nondisparagemen**t. Miegel agrees that he will not make any statements to any third party, whether written or oral, that defame or disparage PayFactors or in any way criticize the personal and/or business reputations, practices, or conduct, of PayFactors' officers, directors, members, managers, or employees. PayFactors agrees that its officers, directors, members, and managers will not make any statements to any third party, whether written or oral, or cause or encourage others to make any such statements to any third party, that defame, disparage, or in any way criticize the personal and/or business reputation, practices, or conduct of Miegel. The foregoing nondisparagement clause shall not apply (a) to statements with respect to PayFactors' products or product offerings made by Miegel in the ordinary course of performing his duties as an employee of another company, or (b) to statements made by Miegel in connection with any testimony compelled by subpoena, court order or other judicial or government authority, so long as Miegel reasonably believes such statements to be true.

*Id.* at 8, § 10.

The Settlement Agreement also included a release provision that provided in relevant part:

> **Releases.** In consideration of this Agreement, each Party hereby



United States District Court
Northern District of California

> releases and discharges the other and its officers, directors, members, managers, and employees, from all known and actual and/or unknown or potential liabilities, demands, causes of action, costs, expenses, attorneys' fees, damages, indemnities, and obligations of every kind at law and equity or otherwise, existing against the other as of the Effective Date, including but not limited to claims arising out of or in any way connected to the employment relationship between the Parties, or the terms or subject matter of the Employment Agreement, or the terms or subject matter of the Confidentiality Agreement. With respect to the mutual releases provided in this paragraph, the Parties acknowledge that they have been advised by their attorneys concerning, and are familiar with, the provisions of California Civil Code Section 1542[.]

*Id.* at 6, § 7.

The Settlement Agreement contained an arbitration provision that provided:

> **Arbitration**. In connection with any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this arbitration clause, shall be determined by arbitration in San Francisco, California, before a single arbitrator. The arbitration shall be administered by JAMS pursuant to JAMS' Streamlined Arbitration Rules and Procedures. Judgment on the Award may be entered in any court having jurisdiction. This clause shall not preclude any Party from seeking provisional remedies in aid of arbitration, including but not limited to injunctive relief, from a court of appropriate jurisdiction.

*Id.* at 9-10, § 15(b). Finally, the Settlement Agreement provided that the "prevailing party" in any "dispute, claim or controversy arising out of or relating to" the Settlement Agreement is entitled to reasonable attorneys' fees. *Id.* at 10, §15(c).

### B. The Petition

On March 30, 2026, Miegel filed a Petition for Order Compelling Arbitration and for Injunctive Relief Pending Arbitration ("Petition"), seeking to compel Laliberte under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, to arbitrate claims Miegel asserts in an arbitration case he filed with JAMS against PayScale Inc. ("PayScale") (successor to PayFactors) and Laliberte on December 19, 2025. Petition ¶ 14.

Attached to the Petition is Miegel's arbitration demand, which contains detailed allegations concerning the dispute that led to the execution of the Settlement Agreement. Petition, Ex. 1, dkt. no. 1 at ECF pp. 8-54 ("Arbitration Demand"). Among other things, Miegel alleges that he "demanded a nondisparagement clause as essential to the settlement[,]" "[k]nowing that Laliberte

United States District Court
Northern District of California

would be tempted to badmouth him[.]" Arbitration Demand ¶ 25.

The Petition summarizes the allegations of misconduct by Laliberte in the Arbitration Demand as follows:

> . . . Mr. Miegel alleges that Mr. Laliberte falsely told a background investigator that Mr. Miegel had stolen intellectual property and filed multiple lawsuits while working at PayFactors. Mr. Laliberte did so to interfere with Mr. Miegel's Series A fundraising for a venture that would compete with Laliberte's own company (HR Bench). These statements not only amount to Mr. Laliberte's own defamatory and tortious conduct, they also caused PayScale to breach non-disparagement and confidentiality obligations owed to Mr. Miegel. Mr. Miegel continues to serve as a board member at PayScale and he owns equity in it.

*Id.*; *see also* Arbitration Demand ¶¶ 32-35 (alleging that on April 10, 2025, a background investigator conducting due diligence relating to a Series A term sheet spoke to Laliberte and during that conversation Laliberte made "several disparaging, false, defamatory, and malicious assertions of fact about Mr. Miegel.").

Miegel asserts the following claims against Laliberte in the Arbitration Demand: 1) intentional interference with contractual relationships (Count III); 2) defamation (Count IV); 3) tortious interference with prospective economic relations (Count V); and 4) fraud (Count VI). Petition, Ex. 1 (Arbitration Demand).

Laliberte objected to Miegel's arbitration demand on the basis that Laliberte is not a party to the Settlement Agreement and is not bound by its arbitration provision. Petition, Exhibit 2. Miegel, in turn, filed a state court complaint against Laliberte in Massachusetts, where Laliberte resides, asserting claims for defamation, tortious interference with contract and prospective economic relations and fraud based on the same conduct upon which his arbitration claims are based. *See* Declaration of Alejandro H. Cruz on Support of (I) Respondent's Opposition to Petitioner's Motion to Compel Arbitration and (II) Respondent's Motion to Dismiss Pursuant to Fed R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction ("Cruz Decl."), Ex. 4 (State Court Complaint, Filed April 9, 2026). According to Miegel, he filed that case protectively after Laliberte refused to arbitrate or to enter into an agreement to toll California's one-year limitations period on his defamation claim while his Petition is pending. Reply on Motion to Compel at 3 n.

1. At the motion hearing, the parties informed the Court that the Massachusetts case is stayed pending this Court's ruling on Miegel's arbitration petition.

**C. The Motion to Compel**

In the Motion to Compel, Miegel acknowledges that Laliberte is not a party to the Settlement Agreement but contends Laliberte is bound by the arbitration provision contained in it under three doctrines of California state law. Motion to Compel at 9-15. First, he contends Laliberte is bound as a third-party beneficiary of the Settlement Agreement. *Id.* at 11-13. Second, he asserts that Laliberte is estopped from denying his contractual obligation to arbitrate under the Settlement Agreement. *Id.* at 13-15. Third, he argues that Laliberte is obligated to arbitrate under the Settlement Agreement as an agent of PayFactor. *Id.* at 15-17. Miegel argues further that the claims he asserts in the JAMS arbitration fall within the scope of the arbitration provision in the Settlement Agreement. *Id.* at 17-20. Miegel asks the Court to compel Laliberte to arbitration and further requests an award of attorneys' fees incurred in this litigation as a prevailing party. *Id.* at 20.

**D. The Motion to Dismiss**

In the Motion to Dismiss, Laliberte asserts this Court does not have personal jurisdiction over him because he is a Massachusetts resident with no ties to California and because he is not a party to the Settlement Agreement and did not consent to personal jurisdiction in California under the Settlement Agreement. He argues that Miegel's reliance on the doctrines of estoppel, third party beneficiary and agency should be rejected because, among other things, Laliberte has never claimed any benefit under the Settlement Agreement or invoked any right under it.

Laliberte has supplied a declaration in which he attests that he is a long-time resident of Massachusetts with no significant ties to California. Declaration of Jeff Laliberte in Support of (I) Respondent's Opposition to Petitioner's Motion to Compel Arbitration; and (II) Respondent's Motion to Dismiss Pursuant to Fed R. Civ. P. 12(b)(2) For Lack of Personal Jurisdiction ("Laliberte Decl.") ¶¶ 2-10. He describes his relationship with PayFactors and its successor, PayScale, as follows:

> 15. In 2013, I co-founded PayFactors, Inc. ("PayFactors") with three

> other individuals, and in or around 2015, I accepted the role of Chief Executive Officer ("CEO") of PayFactors.
>
> 16. PayFactors was a Delaware company with its principal place of business in Massachusetts. PayFactors did not maintain an office in California.
>
> 17. In March 2021, PayFactors was acquired by PayScale, Inc. ("PayScale").
>
> 18. I served as PayScale's Chief Strategy Officer from March 2021 to April 2022. From April 2022 until May 2023, I served as an Advisor to PayScale.
>
> 19. In March 2021, I also joined PayScale's board of directors.
>
> 20. On May 12, 2023, I resigned from PayScale's board of directors.
>
> 21. Since May 12, 2023, I have not served as a board member, officer, or employee of PayScale, and have had no involvement in its operations.
>
> 22. To the best of my knowledge, PayScale is incorporated in Washington and had no California office while I was employed there.

Laliberte Decl. ¶¶ 15-22.

Laliberte states in his declaration that he "did not have any discussions with anyone relating to any provision of the Settlement being for [his] personal benefit, nor did [he] ever have an understanding that any provision of the Settlement was negotiated or intended for [his] personal benefit." *Id.* ¶ 39. He further states that he "did not request that a non-disparagement provision or release be included in the Settlement." *Id.* ¶ 40. According to Laliberte, he signed the Settlement Agreement only in his capacity as CEO of PayFactors, he has "never sought a benefit" under the Settlement Agreement and he has "never enforced the Settlement's release or non-disparagement clauses (Settlement §§ 7 & 10, respectively) against anyone, including Mr. Miegel." *Id.* ¶¶ 41-45. He states that at the time he signed the Settlement Agreement, he understood that it "would not bind [him] personally." *Id.* ¶ 46.

Laliberte concedes in his declaration that in April of 2025 he spoke on the telephone with an individual who was conducting due diligence in connection with Miegel and his company and that "[d]uring the call, [he] provided opinions based on [his] personal experience working with Mr. Miegel, as well as facts that [he] recalled regarding [his] experience with Mr. Miegel." *Id.* ¶ 58.

## III. ANALYSIS

### A. Legal Standards

#### 1. Rule 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may seek dismissal of an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re W. States Wholesale Nat. Gas Antitrust Litig*., 715 F.3d 716, 741 (9th Cir. 2013). "When a district court acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). When deciding a motion to dismiss under Rule 12(b)(2), a district court may consider evidence outside of the pleadings, including affidavits submitted by the parties, and may order discovery on jurisdictional issues. *Doe v. Unocal Corp*., 248 F.3d 915, 922 (9th Cir. 2001). Although the facts in the complaint are generally accepted as true on a motion to dismiss, the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc. v. Sys. Tech. Assoc., Inc*., 557 F.2d 1280, 1284 (9th Cir. 1977).

#### 2. The FAA

Under the FAA, a party to a valid arbitration agreement may "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "By its terms, section 4 of the FAA limits the court's discretion; the court must order the parties to proceed to arbitration only in accordance with the terms of their agreement." *Lifescan, Inc. v. Premier Diabetic Servs., Inc*., 363 F.3d 1010, 1012 (9th Cir. 2004) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). "Thus, the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *Id.*

The FAA reflects a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983)). Nonetheless, the FAA "imposes certain rules of

fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.' " *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp*., 559 U.S. 662, 681 (2010) (quoting *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Univ*., 489 U.S. 468, 479 (1989)). Thus, when a question arises as to whether "a particular party is bound by the arbitration agreement," "the liberal federal policy regarding the scope of arbitrable issues is inapposite." *Comer v. Micor, Inc*., 436 F.3d 1098, 1104 n. 11 (9th Cir. 2006) (emphasis in original; citation omitted). "When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Philadelphia Indem. Ins. Co. v. SMG Holdings, Inc*., 44 Cal. App. 5th 834, 840 (2019) ("whether a contract may be enforced by or against a nonsignatory to the contract is determined by principles of state law.").

### B. Whether the Arbitration Provision is Binding on Laliberte

#### 1. Third Party Beneficiary

Under California law, a person is a third-party beneficiary where a contract is "made expressly for the benefit of [that] third person." Cal. Civ. Code § 1559. "Whether a nonsignatory is an intended third party beneficiary to the contract is determined from the parties' intent, as gleaned from the contract as a whole and the circumstances under which it arose." *Philadelphia Indem. Ins. Co. v. SMG Holdings, Inc.,* 44 Cal. App. 5th 834, 841 (2019).

"It is well established that a non-signatory beneficiary of an arbitration clause is entitled to require arbitration." *Harris v. Superior Ct.,* 188 Cal. App. 3d 475, 478 (1986). However, it is "a closer question" whether "a non-signatory beneficiary can be forced to arbitrate." *Id.*; *see also Comer v. Micor, Inc*., 436 F.3d 1098, 1102 (9th Cir. 2006) ("A third party beneficiary might in certain circumstances have the power to sue under a contract; it certainly cannot be bound to a contract it did not sign or otherwise assent to."). Courts applying California law have found that while "nonsignatories may enforce an arbitration agreement against a party to the agreement simply by showing they are intended third party beneficiaries of the arbitration agreement. . . to enforce [an] arbitration agreement *against* . . . third party beneficiaries, [the party seeking arbitration] would have to show [the third party beneficiaries] actually accepted a benefit under the

agreement." *Cook v. Univ. of S. California*, 102 Cal. App. 5th 312, 328 (2024), reh'g denied (June 13, 2024) (emphasis added).

For example, in *Harris*, the court concluded that a doctor could be compelled to arbitrate under an arbitration provision in an agreement between his medical group and the health plan for which the group provided medical care, even though the doctor himself was not a signatory to the agreement, because the doctor had "obtained patients through enrollments in the . . . health plan . . . [and] [h]is acceptance of this benefit necessarily entailed acceptance of the agreement that members' claims would be subject to binding arbitration." 188 Cal. App. 3d at 479 (citing Cal. Civ. Code § 1589) ("A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting."). Thus, the doctor was required to arbitrate claims asserted against him by a patient as a third-party beneficiary.

In contrast, in *Benasra v. Marciano*, 92 Cal. App. 4th 987 (2001), the court found that where an individual (Benasra) had "unambiguously signed [licensing agreements containing arbitration provisions] as a corporate officer" he was not bound by those provisions as a third party beneficiary with respect to claims he sought to litigate against the licensor. The court distinguished *NORCAL Mutual Ins. Co. v. Newton*, 84 Cal.App.4th 64 (2000), in which "the court held that a nonsignatory who accepts the benefits of an insurance policy is bound by the policy's arbitration provision." 92 Cal. App. 4th at 991. It explained, "[t]he point of *NORCAL* is that a person is not entitled to make use of a contract as long as it works to his advantage, then attempt to avoid its application in defining the forum in which his dispute should be resolved." *Id.* In *Benasra*, the court found that there was "nothing in the record to suggest that Benasra ha[d] attempted to gain some personal benefit from [his employer's] contract with [the licensor]." *Id.* While the court did "not foreclose the possibility that a nonsignatory third-party beneficiary could in some circumstances be compelled to arbitrate a particular dispute," it found "nothing about [the] case to suggest the need or desirability for that remedy[,]" observing that "[i]t is one thing to *permit* a nonsignatory to relinquish his right to a jury trial, but quite another to *compel* him to do so." *Id (*emphasis added).

Here, Miegel relies on the release and nondisparagement provisions of the Settlement Agreement, Sections 7 and 10, to establish that Laliberte is a third-party beneficiary of the agreement. In particular, he asserts that under the nondisparagement provision, Miegel "could not make any disparaging statements regarding the business reputation of its co-founders." Motion to Compel at 4. Similarly, he asserts that under the release provision, "Mr. Laliberte obtained a personal release of claims through the Settlement Agreement's broad release, which extended to PayFactors' "officers, directors, members, managers, and employees[.]" *Id*. Miegel also contends Laliberte benefited from the Settlement Agreement because it resolved Miegel's dispute with PayFactor relating to his equity interest, thus "shoring up" Laliberte's own equity interest "and the enterprise value of the company." *Id.* at 12.

The Court finds that there is nothing in the language of the Settlement Agreement that suggests either the release or the nondisparagement provisions of the Settlement Agreement were specifically intended to benefit Laliberte, who is never named in the agreement as a party or in any of its other provisions. Nor has Miegel pointed to any authority that suggests that an agreement that releases potential claims against a party's "officers, directors, members, managers, and employees" – or that prohibits disparagement of such individuals -- is binding on those individuals, even if they themselves did not sign the agreement, simply by virtue of the fact that they might obtain some benefit from such provisions. Indeed, such a conclusion would fly in the face of the rule that "third-party beneficiaries are not bound under contracts to which they are not parties[.]" *Picazo v. Aptos Berry Farms, Inc.*, No. 23-CV-02735-SVK, 2023 WL 7251466, at *7 (N.D. Cal. Nov. 2, 2023); *see also Kumar v. SkyHop Glob., LLC*, No. 21-CV-09141-VC, 2022 WL 2709419, at *1 (N.D. Cal. July 13, 2022) ("A third-party beneficiary of a contract may enforce the contract's arbitration agreement against a signatory."). Similarly, the Court rejects Plaintiff's assertion that Laliberte is bound by the Settlement Agreement because it increased the value of the company and therefore benefited Laliberte as a shareholder. Such a rule would potentially result in binding all corporate shareholders to contracts to which they are not signatories and is unsupported by any authority.

Nor has Miegel pointed to any conduct that suggests that Laliberte assented to be bound by

United States District Court
Northern District of California

the Settlement Agreement by claiming a benefit under the agreement. *See McArthur v. McArthur,* 224 Cal. App. 4th 651, 662 (2014) ("the case law . . . requires that the third party *claim* benefits or rights under the contract before he or she will be bound to arbitrate.") (emphasis in original). There is no evidence in the record that Laliberte requested the release or nondisparagement provisions during the drafting process (and indeed, Miegel alleges that it was he and not Laliberte who demanded the inclusion of a nondisparagement provision) or that he benefited from either one in any concrete way. There is no evidence in the record that prior to the execution of the Settlement Agreement Miegel had threatened to sue Laliberte as an individual or that Laliberte was facing any specific threat of personal liability to Miegel. Nor is there evidence in the record that Laliberte was concerned about possible disparagement by Miegel. And Laliberte has supplied a declaration attesting that he has never affirmatively invoked the Settlement Agreement against Miegel in any way – an assertion that is uncontroverted. Therefore, the Court rejects Miegel's reliance on the third-party beneficiary doctrine in support of compelling Laliberte to participate in the arbitration that Miegel has initiated.

**2. Equitable Estoppel**

The analysis under the doctrine of equitable estoppel is similar to the third party beneficiary analysis. "Equitable estoppel generically precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 220 (2009) (internal quotations and citations omitted). "The 'linchpin' for equitable estoppel is fairness." *Kramer v. Toyota Motor Corp*., 705 F.3d 1122, 1133 (9th Cir. 2013) (quoting *Goldman*, 173 Cal. App. at 220). Thus, Laliberte may be bound by the Settlement Agreement's arbitration provision under this doctrine only if he "seeks to enforce terms of the contract, asserts claims that must be determined by reference to that contract, or knowingly seeks and obtains *direct* benefits from the contract." *Walters v. Famous Transports, Inc*., 488 F. Supp. 3d 930, 936 (N.D. Cal. 2020) (emphasis added). Laliberte has not sought to enforce any term of the Settlement Agreement or assert claims that must be determined by reference to it; nor has he sought or obtained direct

United States District Court
Northern District of California

benefits from it, as discussed above.[2] Therefore, he is not bound by the arbitration provision in the Settlement Agreement under the doctrine of equitable estoppel.

**3. Agency**

"In California, '[a] nonsignatory to an agreement to arbitrate may be required to arbitrate, and may invoke arbitration against a party, if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory.' " *Murphy v. DirecTV, Inc*., 724 F.3d 1218, 1232 (9th Cir. 2013) (quoting *Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co*., 129 Cal.App.4th 759, 765 (2005)). California courts have found that this rule applies in cases where "[a] nonsignatory [who has been] sued as an agent of a signatory" sought to "enforce an arbitration agreement." *Rowe v. Exline*, 153 Cal. App. 4th 1276, 1284 (2007) (emphasis added). Likewise, courts have applied the rule where a nonsignatory agent sued for breach of a contract containing an arbitration clause. *See RN Solution, Inc. v. Catholic Healthcare West*, 165 Cal. App. 4th 1511, 1520 (2008) (holding that nonsignatory CEO and President who sued under contract with arbitration provision was required to arbitrate claims where she personally benefited from the contract). As Laliberte does not seek to enforce the arbitration provision in the Settlement Agreement and does not assert any claims under the Settlement Agreement, those cases are not on point.

Miegel also relies on *Keller Constr. Co. v. Kashani*, 220 Cal. App. 3d 222 (1990) but the Court finds that that case is also distinguishable. There, a contractor entered into an arbitration agreement with a limited partnership where the arbitration agreement was signed by the sole

---

[2] Miegel contends Laliberte is bound by the arbitration provision because he is *likely* to invoke the release in the Settlement Agreement in the Massachusetts action, pointing to the fact that Laliberte's counsel has refused to disclaim any rights Laliberte might have under that provision. Reply in Support of Motion to Compel at 5-6; Korr Decl., Ex. A. He has cited no authority, however, for the proposition that a third-party beneficiary of an arbitration agreement can be required to arbitrate based on a benefit they *might* in the future claim under the agreement. Of course, were Laliberte to invoke the release in the Settlement Agreement at some point in the future, Miegel might have a stronger argument that Laliberte should be bound by the arbitration provision in the Settlement Agreement. Nothing in the Court's Order precludes Miegel from seeking to enforce the arbitration agreement if Laliberte claims or affirmatively accepts a direct benefit under the Settlement Agreement in the future.

general partner. When the contractor served an arbitration demand on the sole general partner, the general partner refused to arbitrate on the ground that only the partnership was bound by the agreement. 220 Cal. App. 3d at 224. The court found, however, that the general partner was bound by the arbitration agreement, pointing to California statutory law providing that "a general partner of a partnership is liable for 'all . . . debts and obligations of the partnership . . . .' " *Id.* at 228 (citing Cal. Corp. Code, §§ 15015, subd. (b), 15509, subd. (1).) The court reasoned:

> [U]nder the California Corporations Code, "[t]he general partners control the business of a limited partnership. (Corp. Code, § 15507, subd. (a).) The general partner is an agent of the limited partnership (Corp. Code, §§ 15009, subd. (1), 15509, subd. (1)) and is logically a beneficiary of any agreement entered into on behalf of the partnership. In sum, the relationship between a sole general partner and a limited partnership is such that the partner is bound by an agreement to arbitrate disputes entered into by the partnership.

*Id.* The result in *Keller*, then, turned on the particular statutory framework governing the relationship between a general partner and a limited partnership. That framework does not apply to Laliberte's relationship with PayForce and Miegel has not cited authority that persuades the Court that the holding of that case should be expanded to the CEO of a corporation.

Accordingly, the Court concludes based on the current record that the Settlement Agreement is not binding on Laliberte and therefore, that Laliberte has not consented to personal jurisdiction.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS the Motion to Dismiss and dismisses this action without prejudice for lack of personal jurisdiction. The Clerk is instructed to close the case.

**IT IS SO ORDERED.**

Dated: October 30, 2026

JOSEPH C. SPERO
United States Magistrate Judge



United States District Court
Northern District of California